IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TURQUOISE WYLIE
4027 Alabama Ave SE
Washington, DC 20020,
*Plaintiff,*

v.

EASTGATE FAMILY RENTAL LIMITED PARTNERSHIP D/B/A GLENNCREST
1040 Park Avenue, Suite 300
Baltimore, MD 21201,

and

A & R MANAGEMENT, INC.
1040 Park Avenue, Suite 300
Baltimore, MD 21201

and

KETTLER MANAGEMENT, INC.
1751 Pinnacle Drive, Suite 700
McLean, VA 22102,

and

THE RADDATZ LAW FIRM, P.L.L.C
1212 New York Avenue, N.W.
Suite 850
Washington, D.C. 20005,

and

EDWARD L. PUGH, II, ESQ.
1212 New York Avenue, N.W.
Suite 850
Washington, D.C. 20005,
*Defendants.*

Civil Action No. ____________

## COMPLAINT

Plaintiff Turquoise Wylie, by and through her attorneys, for her Complaint for damages and declaratory and injunctive relief, hereby alleges, on the basis of personal knowledge, information and belief, as follows:

## NATURE OF THE ACTION

1. Beginning in June 2014, Defendants Eastgate Family Rental Limited Partnership d/b/a Glenncrest, A & R Management, Inc. and Kettler Management, Inc. (together, "the Glenncrest Defendants"), The Raddatz Law Firm, and Edward L. Pugh, II, Esq. (collectively with the Glenncrest Defendants, "the Defendants") commenced a course of action intended to wrongfully evict Ms. Wylie from Glenncrest, where she had resided since 2008.

2. Ms. Wylie was current in her rental payments, and the Glenncrest Defendants had no valid basis to evict her from her home.

3. In pursuing the eviction of Ms. Wylie, on behalf of the Glenncrest Defendants, The Raddatz Law Firm and Mr. Pugh failed to comply with the Fair Debt Collection Practices Act and District of Columbia common law, and made misrepresentations both to Ms. Wylie and the Landlord / Tenant Branch of the Superior Court of the District of Columbia ("L/T Branch").

4. As a result of Defendants' actions, Ms. Wylie was wrongfully evicted and rendered homeless.

5. Ms. Wylie has suffered extensive damages due to the acts of the Defendants. Ms. Wylie, who was pregnant at the time of the Defendants' wrongful acts, experienced pre-term labor soon after she was evicted. Her premature newborn was hospitalized in the neonatal intensive care unit shortly after birth. Because she could not find another subsidized rental unit, and because she was twice turned away from family homeless shelters due to overcrowding,

Ms. Wylie ultimately had to separate from her three older children and send them to live with relatives over an extended period of time.

6. In addition, because the District of Columbia has a lengthy waiting list for subsidized units, Ms. Wylie, having lost her subsidy as a direct result of the eviction, will not be able to regain access to subsidized housing for many years, if ever, resulting in additional harm to Ms. Wylie, both financial and emotional, because it further delays the complete reunification of her family.

7. Ms. Wylie will continue to suffer these damages until she obtains another subsidized unit essentially comparable to the unit from which she was wrongfully evicted.

## JURISDICTION AND VENUE

8. Jurisdiction of this action is vested in this Court pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the Defendants reside and/or transact business in this jurisdiction and all or a substantial part of the events, acts and/or omissions giving rise to the Plaintiff's claims occurred in this judicial district.

## PARTIES

10. Ms. Wylie is a 37 year-old single mother of four children, ages two, seven, fifteen, and eighteen, who currently resides with her mother at 4027 Alabama Ave SE Washington, DC 20020. At the time of the events detailed in this Complaint, she resided in the

apartments known as the Glenncrest Development, operated and managed by the Glenncrest Defendants, at 5069 Kimi Gray Court, SE, Washington, DC.

11. Defendant Eastgate Family Rentals (d/b/a Glenncrest) ("Glenncrest") is a limited partnership organized and operating under the laws of the District of Columbia. Eastgate Family Rental is the record owner of the rental units comprising the Glenncrest Development, including the unit rented by the Plaintiff at the time of the events detailed in this Complaint.

12. Defendant A & R Management, Inc. ("A&R") is a corporation organized and operating under the laws of Maryland. From the beginning of Plaintiff's tenancy until 2014, pursuant to a contract with Eastgate Family Rental Limited Partnership, A&R served as the Managing Agent for the Glenncrest Development. A&R's duties as Managing Agent included, among other things, signing leases and lease amendments with tenants; performing tenant certifications and recertifications; and establishing rent, utility allowance, and utility reimbursement amounts.

13. Defendant Kettler Management, Inc. ("Kettler") is a corporation organized and operating under the laws of Virginia. From mid-2014 until the present, Kettler has been the Managing Agent for the Glenncrest Development. Kettler's duties as managing agent include, among other things, signing leases and lease amendments with tenants; performing tenant certifications and recertifications; and establishing rent, utility allowance, and utility reimbursement amounts.

14. Defendant The Raddatz Law Firm, P.L.L.C. (the "Raddatz Firm") is a District of Columbia Professional Limited Liability Company engaged in the practice of law and located at 1212 New York Avenue, N.W., Suite 850, Washington, DC 20005.

15. Defendant Edward L. Pugh, II, Esq. is an attorney barred in the District of Columbia and employed by the Raddatz Firm. Mr. Pugh represented the Glenncrest Defendants as the attorney of record in the eviction matter at issue in this Complaint.

16. Defendant the Raddatz Firm and its principal and/or employee, Defendant Edward L. Pugh, II focus all or a substantial portion of their legal practice on the representation of commercial and residential landlords in regard to landlord/tenant relationships and related disputes. The Raddatz Firm openly markets itself as a debt collection firm. At times relevant to the subject matter of this action, the Raddatz Firm's homepage listed "retail and commercial debt collection" as one of its three principal practice areas. Among the firm's advertised services to landlords were notices for nonpayment; all manner of court appearances; and "Post-Judgment rent Deficiency Collection." As such, the Raddatz Firm and Mr. Pugh are, by their own admission, "debt collectors" within the scope and contemplation of the FDCPA, 15 U.S.C. § 1692a(6).

## FACTS

### A. Background

17. Ms. Wylie lived in the apartment she leased from the Glenncrest Defendants in the Glenncrest Development, at 5069 Kimi Gray Court SE, from approximately 2008 until she was evicted on September 30, 2014.

18. Ms. Wylie resided in the apartment with her three older children, now aged seven to eighteen. She was more than seven months pregnant with her youngest child when she was evicted in September 2014.

19. Ms. Wylie's monthly rent was subject to a subsidy provided by the D.C. Housing Authority ("DCHA") and the U.S. Department of Housing and Urban Development ("HUD").

20. HUD provides federal funding for a variety of programs to subsidize rental housing for low-income tenants, including conventional and mixed-income public housing.

21. The United States Housing Act of 1937 established the conventional public housing program to "promote the goal of providing decent and affordable housing for all citizens" by supplying funding to states and local jurisdictions to remedy "the acute shortage of decent and safe dwellings for low-income families." 42 U.S.C. § 1437(a); *see also* 24 C.F.R. parts 965, 966 (implementing regulations). Conventional public housing is owned and operated by local public housing agencies ("PHAs") and rented to low-income individuals or families, who pay approximately thirty percent (30%) of their income toward the monthly rent. *See* Section 1437a(a). HUD supplements this rental stream with operating subsidies under an Annual Contributions Contract between HUD and the local PHA, as well as capital grants.

22. PHAs have the authority to use their capital and/or operating funds to participate in mixed-finance projects, in which some or all of the units in a leased building may be supported with PHA subsidies, along with other funding sources. In such a project, any unit funded with PHA capital or an operating subsidy is subject to all of the rules, regulations, and protections applicable to conventional public housing. 42 U.S.C. § 1437z-7.

23. Ms. Wylie's apartment unit was subject to the federal statutory provisions, federal and local regulations, and federal and local policies governing the conventional public housing program.

24. The L/T Branch is the principal forum within the District of Columbia court system for the resolution of local legal disputes involving matters of possession of real property and alleged breaches of lease agreements. According to the Superior Court's Annual Reports, there were 32,590 new cases commenced in the L/T Branch in 2015, and 33,356 new cases filed in 2016. The tenant party in these actions is represented by counsel in only about five to ten percent (5-10%) of the cases.

25. In an effort to level, at least to some limited extent, the playing field for tenants proceeding on a *pro se* basis in matters litigated in the L/T Branch in which the tenant's right to continue to occupy his or her place of residence might be at stake, the Superior Court, acting on recommendations by its Advisory Subcommittee on Landlord and Tenant Rules, adopted an amended standard-form pre-printed "Verified Complaint for Possession of Real Property – Form 1A (Nonpayment of Rent-Residential Property)" for use by landlords in commencing eviction actions in the L/T Branch, effective as of February 2010.

26. The amended standard Verified Complaint-Form 1A expressly requires a landlord seeking eviction (or its counsel) to respond, among other things, to the following inquiry:

> 4. Rent for the property of which Plaintiff seeks possession is subsidized by the federal or local government?
>
> ___ Yes ___ No

The manner in which this inquiry is answered by or on behalf of the landlord may be of critical importance, because tenants residing in subsidized rental properties are entitled to the protection of certain statutory and/or regulatory defenses to repossession that are not available to tenants residing in non-subsidized rental housing. Thus, where Question No.4 of the Verified

Complaint-Form 1A is answered "Yes" by the landlord in cases in which the defendant tenant is not represented by counsel, the presiding L/T Branch Judge is alerted to the need to assure that the *pro se* tenant is appropriately advised of his/her rights.

27. Moreover, even if the tenant has the benefit of legal representation, an affirmative answer to Question No. 4 alerts counsel to the availability of special defenses to eviction on the part of subsidized tenants that are simply inapplicable to tenants residing in non-subsidized rental housing. For example, the Brooke Amendment to the United States Housing Act, 42 U. S.C. §§ 1437a(a),– specifying that subsidized tenants may only pay thirty percent (30%) of their income as "rent" – prevents landlords from converting other fees, such as expenses for utilities, to "rent." For tenants in non-subsidized housing, lease provisions allowing this type of recharacterization of fees as rent are relatively common. Similarly, while nonsubsidized tenants in D.C. may waive their right to receive a 30-day notice to vacate the premises prior to the landlord seeking eviction based on nonpayment of rent, and most standard-form leases impose such a waiver as a matter of routine, the public housing program regulations preclude a waiver and a pre-suit notice is thus required. *See* 24 C.F.R. § 966.4(1)(3).

28. For tenants living in DCHA/HUD-subsidized rental housing, the stakes in an eviction case also are much higher than the norm. By virtue of their admission into and ongoing eligibility for a subsidized housing program, public housing and voucher tenants are, by definition, low-income and vulnerable. Depending on the specifics of the case and the subsidy involved, eviction will result either in the loss of or a serious threat to the housing subsidy itself. Once a housing subsidy is lost, few, if any, tenants will ever be able to regain it. The centralized waiting list maintained by DCHA for those seeking subsidized public housing

and the Housing Choice Voucher Program has been closed since April 2013, and at last count numbered over 40,000 families.

**B. The Complaint for Eviction**

29. In May 2014, Ms. Wylie entered into an agreement with a representative of the Glenncrest Defendants for the repayment of $603.00, which was to cover outstanding water bills that had accrued due to a billing error by the Glenncrest Defendants and would bring her tenant account fully current.

30. The agreement was prepared in the Glenncrest Development rental office. No court action for possession was pending at the time. Ms. Wylie and a representative of the Glenncrest Defendants went through her tenant ledger in detail, and the representative determined that she had been erroneously overbilled for utilities and reduced her total outstanding balance to $603.00. The representative then called and spoke to an attorney at the Raddatz Firm while Ms. Wylie sat in the office. After speaking with the attorney, the representative faxed the agreement to the Raddatz Firm, still with Ms. Wylie sitting in the office.

31. For reasons that are not clear, the representative of the Glenncrest Defendants drafted the agreement with an L/T Branch caption made to appear as though it was associated with an on-going legal proceeding or was sanctioned by the court, which it was not.

32. At that time, Ms. Wylie was current in her monthly rent – which was $366.00 per month because her unit was subsidized – and there was no assertion or even a suggestion by the Glenncrest Defendants to the contrary.

33. Despite these facts, the Glenncrest Defendants, by counsel, filed a complaint for possession of the property on June 24, 2014, falsely alleging that Ms. Wylie failed to pay $1,930 in rent due from January 2014 to June 2014, including late fees.

34. Because Ms. Wylie's unit was subsidized, it was subject to federal public housing regulations requiring that tenants be provided with a written lease termination notice, a right that may not be waived.

35. Prior to filing the complaint for possession, the Glenncrest Defendants did not serve Ms. Wylie with a Notice to Correct or Vacate, as required by law.

36. In the complaint for possession, the Raddatz Firm alleged that Ms. Wylie had waived the right to receive such a notice, when, in fact, she did not waive and could not have waived this right as a matter of law.

37. In the complaint for possession, the Raddatz Firm, in response to Question No. 4, checked a box indicating that Ms. Wylie's rent was not subsidized, when it was, in fact, subsidized.[1]

38. Due to these knowing misrepresentations, the court was not made aware of the statutory and/or regulatory defenses to eviction available to Ms. Wylie based on her subsidy status, including but not limited to her legal entitlement to be served with a Notice to Correct or Vacate as a precondition to the filing of any eviction action.

---

[1] The Raddatz Firm's misrepresentation of Ms. Wylie's rental-subsidy status in the eviction complaint, as of the time it was made in this case, was part of an on-going pattern and practice engaged in by the Firm that was the subject of a proposed class-action lawsuit brought in this court, captioned *Natalie Lipscomb, et al. v. The Raddatz Law Firm, P.L.L.C., et al.*, Case No. 1:14-cv-01958 (JEB) (D.D.C. filed Nov. 19, 2014), seeking relief under the Fair Debt Collection Practices Act. After a motion to dismiss that case was denied by Judge Boasberg -- *see* 109 F. Supp. 3d 251 (D.D.C. 2015) -- the litigation was settled. Ms. Wylie's dispute was exempted from that settlement.

## C. The Eviction Proceeding

39. The initial hearing in the case was set for July 25, 2014.

40. Both parties appeared at the July 25, 2014 hearing; Ms. Wylie appeared *pro se*, and the Glenncrest Defendants appeared through its counsel, Mr. Pugh of the Raddatz Firm.

41. At that hearing, Ms. Wylie discussed the case with Mr. Pugh.

42. Ms. Wylie informed Mr. Pugh that the parties had already entered into a May 22, 2014 out-of-court agreement, concerning her water bills, which she understood to have resolved all outstanding claims.

43. Mr. Pugh denied having knowledge of the agreement, despite the fact that his office was contacted at the time Ms. Wylie made the agreement with the representative of the Glenncrest Defendants, and a copy was faxed to his office at the same time. Ms. Wylie provided Mr. Pugh with a copy of the agreement.

44. Based on her conversation with Mr. Pugh, Ms. Wylie understood that, as long as she caught up on the payments due under the May 22, 2014 agreement, she did not need to reappear in court for any subsequent hearings and the eviction action would be resolved.

45. On August 22, 2014, the date set for a further initial hearing in the case, Ms. Wylie did not appear, based on her earlier discussion with Mr. Pugh and, specifically, her understanding that the matter would be resolved if she caught up on the payments due under the May 22, 2014 agreement.

46. Despite the parties' prior understanding, Mr. Pugh made an oral request for an order finding Ms. Wylie in default on the eviction claim, which the court granted.

47. The case was scheduled for an *ex parte* proof hearing on September 12, 2014, with the clerk instructed to serve notice to Ms. Wylie.

48. At no time was notice provided to Ms. Wylie that the Glenncrest Defendants intended to seek a judgment by default, or that such a judgment could be entered on September 12, 2014, at the conclusion of the *ex parte* proof hearing.

49. A notice of *ex parte* proof hearing was generated by the Clerk's Office, but the record does not indicate that it was ever served, and Ms. Wylie testified under oath, without contradiction, that she did not receive it.

50. Ms. Wylie never actually received the notice of *ex parte* proof hearing.

51. Ms. Wylie did not appear at the *ex parte* proof hearing.

52. At the *ex parte* proof hearing, the court heard testimony from Ophelia Johnson, property manager for the Glenncrest Defendants.

53. Mr. Pugh questioned Ms. Johnson about the lease provisions which governed the claims in the case.

54. Specifically, Mr. Pugh referred Ms. Johnson to provisions on both failure to pay rent *and* failure to pay utilities, which, under the terms of the standard-form lease agreement – but contrary to applicable federal law regarding subsidized rental housing – was to be designated as a failure to pay rent.

55. Ms. Johnson testified that Ms. Wylie was in arrears on her monthly rent by a total of $2,556.99 – a representation which was false.

56. Ms. Wylie had paid the Glenncrest Defendants amounts sufficient to meet her rent obligations every month.

57. It is not clear what portion of this alleged balance, if any, was considered by the Glenncrest Defendants to constitute rent, and what portion, if any, represented unpaid water bills.

58. Ms. Wylie and a representative of the Glenncrest Defendants had entered an agreement meant to address her utility balance, and Ms. Wylie was up-to-date on her payments under that agreement, as well as up-to-date on her rental payments.

59. After hearing from the Glenncrest Defendants, the court entered judgment for possession against Ms. Wylie, to be effective upon the filing of a Servicemembers Civil Relief Act Affidavit.

60. The Servicemembers Affidavit was filed on September 16, 2014, and a final judgment for possession in favor of the Glenncrest Defendants was entered by the clerk.

61. The Notice to Tenant of Payment Required to Avoid Eviction required by District of Columbia law was filed with the court on September 12, 2014.

62. A writ of restitution was filed and approved on September 22, 2014.

**D. The Eviction and Vacatur**

63. The writ of restitution was executed on September 30, 2014.

64. After the writ of restitution was executed, Ms. Wylie was rendered homeless.

65. Ms. Wylie visited the D.C. Bar Pro Bono Center's Landlord-Tenant Resource Center in Superior Court on multiple occasions thereafter to seek assistance in trying to overturn the judgment. Each time, she was told she needed to gather additional information and documentation prior to filing any motion.

66. On December 17, 2014, Ms. Wylie, still *pro se*, filed a Motion to Vacate Default Judgment, a Motion to Restore her to the rented premises and an Application to Reduce the Tenant Payment Required to Avoid Eviction.

67. Those matters were initially set for hearing on December 22, 2014, but were continued to January 8, 2015, for reasons unclear from the record.

68. Ultimately, the court denied Ms. Wylie's Motion, largely on the grounds that it was untimely, having been filed eighty-two days after she was evicted.

69. At the hearing on Ms. Wylie's Motion, Mr. Pugh again incorrectly represented, this time verbally and directly to the judge, that Ms. Wylie's tenancy was not subsidized.

70. On February 4, 2015, Ms. Wylie filed a timely notice of appeal, seeking review of the denial of her motion to vacate default judgment. Ms. Wylie subsequently obtained counsel from the Legal Aid Society of the District of Columbia to represent her in that appeal.

71. On July 21, 2016, the District of Columbia Court of Appeals held that the trial court abused its discretion in denying Ms. Wylie's motion to vacate the default judgment, reversed the judgment in the Glenncrest Defendants' favor, and remanded.

72. On November 29, 2016, in the proceedings on remand, the trial court vacated the default judgment and dismissed the case pursuant to Super. Ct. R. Civ. 60(b)(4), on the grounds that the Glenncrest Defendants' original service of the bogus eviction complaint upon Ms. Wylie's minor son (13 years old at the relevant time) was defective as a matter of law, thereby making a ruling on other grounds for relief asserted by Ms. Wylie unnecessary.

73. Ms. Wylie has suffered extensive damages due to the unlawful acts of the Defendants. Ms. Wylie went into pre-term labor soon after she was evicted, her newborn son was hospitalized in the neonatal intensive care unit, and because she lost her federal subsidy and cannot afford a market-rent apartment large enough for her family, despite having fulltime employment, Ms. Wylie had to separate from her three older children and send them to live with relatives.

74. More than three years after their eviction, Ms. Wylie's family is still severely underhoused and continues to be separated more often than not; they reside primarily with Ms.

Wylie's mother, who has limited space for the entire family. Ms. Wylie and her four children share one bed and one couch, and the children often end up sleeping on the floor. Many nights, Ms. Wylie will stay elsewhere with friends so as to give her children as much sleeping space as possible, and sometimes her children will also separate from her family and stay with other relatives.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

(For an Award of Declaratory Relief and Statutory Damages Against The Raddatz Firm and Edward Pugh, II for Violation of § 1692e of the FDCPA)

75. Plaintiff Turquoise Wylie realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 through 70, inclusive, of this Complaint.

76. The Glenncrest Defendants brought an action seeking repossession of Ms. Wylie's rental property and the recovery of consumer debt consisting of back rent and/or water bills allegedly due and owing.

77. In bringing the action against Ms. Wylie on the Glenncrest Defendants' behalf, the Raddatz Firm and Mr. Pugh acted as "debt collectors" within the meaning of and subject to the provisions and prohibitions of the FDCPA. *See* 15 U.S.C. § 1692a(6).

78. The Raddatz Firm's and Mr. Pugh's actions in bringing an eviction action against Ms. Wylie violated 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt."

79. The Raddatz Firm and Mr. Pugh used false, deceptive and misleading representations or means in connection with collecting a debt in violation of § 1692e by:

a. Pursuing eviction of Ms. Wylie notwithstanding the fact that she was current in her rent payments;

b. Mischaracterizing Ms. Wylie's unpaid utility bills as "rent" in contravention of federal law applicable to subsidized rental units;

c. Failing to serve Ms. Wylie with a Notice to Quit as required by law applicable to subsidized rental units;

d. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie had waived the right to receive a Notice to Quit;

e. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie's rental unit was not subsidized housing;

f. Misrepresenting in the eviction action and in the *ex parte* proof hearing that Ms. Wylie was behind on her rent payments;

g. Leading Ms. Wylie to believe that she did not need to appear to protect her interests at the August 22, 2014 hearing in the eviction action so long as she caught up on payment of her water bills per the agreement she had previously reached with the Glenncrest Defendants;

h. Failing to serve Ms. Wylie with notice of the *ex parte* proof hearing; and

i. Making misrepresentations to the L/T Branch regarding amounts owed by Ms. Wylie to the Glenncrest Defendants during the *ex parte* hearing.

80. The Raddatz Firm's and Mr. Pugh's actions proximately caused Ms. Wylie to be wrongfully evicted and rendered homeless and to incur substantial consequential economic harm for which statutory damages may be recovered under the FDCPA.

SECOND CAUSE OF ACTION:

(For an Award of Declaratory Relief and Statutory Damages Against The Raddatz Firm and Edward Pugh, II for Violation of § 1692f of the FDCPA)

81. Plaintiff Turquoise Wylie realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 through 70, inclusive, of this Complaint.

82. The Glenncrest Defendants brought an action seeking repossession of Ms. Wylie's rental property and the recovery of consumer debt consisting of back rent and/or water bills allegedly due and owing.

83. In bringing the action against Ms. Wylie on the Glenncrest Defendants' behalf, the Raddatz Firm and Mr. Pugh acted as "debt collectors" within the meaning of and subject to the provisions and prohibitions of the FDCPA. *See* 15 U.S.C. § 1692a(6).

84. The Raddatz Firm's and Mr. Pugh's actions in bringing an eviction action against of Ms. Wylie violated 15 U.S.C. § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

85. The Raddatz Firm and Mr. Pugh used unfair or unconscionable means in attempting to collect a debt in violation of § 1692f by:

a. Pursuing eviction of Ms. Wylie notwithstanding the fact that she was current in her rent payments;

b. Mischaracterizing Ms. Wylie's unpaid utility bills as rent in contravention of federal law applicable to subsidized rental units;

c. Failing to serve Ms. Wylie with a Notice to Quit as required by the law applicable to subsidized rental units;

d. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie had waived the right to receive a Notice to Quit;

e. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie's rental unit was not subsidized housing;

f. Misrepresenting in the eviction action and in the *ex parte* proof hearing that Ms. Wylie was behind on her rent payments;

g. Leading Ms. Wylie to believe that she did not need to appear to protect her interests at the August 22, 2014 hearing in the eviction action so long as she caught up on payment of her water bills per the agreement she had previously reached with the Glenncrest Defendants;

h. Failing to serve Ms. Wylie with notice of the *ex parte* proof hearing; and

i. Making misrepresentations to the L/T Branch regarding amounts owed by Ms. Wylie to the Glenncrest Defendants.

86. Defendants' actions proximately caused Ms. Wylie to be evicted and rendered homeless and to incur substantial consequential economic harm in regard to which statutory damages may be recovered under the FDCPA.

## THIRD CAUSE OF ACTION

(For an Award of Injunctive Relief from the Glenncrest Defendants and Compensatory Damages and Punitive Damages from All Defendants for Wrongful Eviction)

87. Plaintiff Turquoise Wylie realleges and incorporates by reference, as though fully restated herein, the allegations set forth in paragraphs 1 through 70, inclusive, of this Complaint.

88. In the District of Columbia, "[a] tenant has a right not to have his or her possession interfered with except by lawful process, and violation of that right gives rise to a cause of action in tort." *Mendes v. Johnson*, 389 A.2d 781, 787 (D.C. 1978). Defendants were legally obligated to refrain from interfering with Ms. Wylie's possession of the apartment without lawful process.

89. The tortious act of wrongful eviction arises when there is an act of a "permanent character with the intention and effect of depriving the tenant of the enjoyment of the demised premises." *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95 (D.C. 2007).

90. Defendants wrongfully evicted Ms. Wylie through the following acts, with the intention of permanently depriving Ms. Wylie and her children of the enjoyment of their home at Glenncrest:

a. Pursuing eviction of Ms. Wylie notwithstanding the fact that she was current in her rent payments;

b. Mischaracterizing Ms. Wylie's unpaid utility bills as rent in contravention of federal law applicable to subsidized rental units;

c. Failing to serve Ms. Wylie with a Notice to Quit as required by the law applicable to subsidized rental units;

d. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie had waived the right to receive a Notice to Quit;

e. Falsely indicating on the Verified Form 1A complaint for possession that Ms. Wylie's rental unit was not subsidized housing;

f. Misrepresenting in the eviction action and in the *ex parte* proof hearing that Ms. Wylie was behind on her rent payments;

g. Leading Ms. Wylie to believe that she did not need to appear to protect her interests at the August 22, 2014 hearing in the eviction action so long as she caught up on payment of her water bills per the agreement she had previously reached with the Glenncrest Defendants;

h. Failing to serve Ms. Wylie with notice of the *ex parte* proof hearing;

i. Making misrepresentations to the L/T Branch regarding amounts owed by Ms. Wylie to the Glenncrest Defendants.

91. These actions had the effect wrongfully intended by the Defendants, as Ms. Wylie was unjustly evicted as a result of the Defendants' actions.

92. Defendants' actions proximately caused Ms. Wylie to become homeless, lose her federal housing subsidy and to incur substantial consequential economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Turquoise Wylie respectfully requests that this Court:

A. Find and declare that Defendants wrongfully evicted Ms. Wylie;

B. Find and declare that the Raddatz Firm and Mr. Pugh violated 15 U.S.C. § 1692e in evicting Ms. Wylie;

C. Find and declare that the Raddatz Firm and Mr. Pugh violated 15 U.S.C. § 1692f in evicting Ms. Wylie;

D. Enjoin the Glenncrest Defendants to place Ms. Wylie in the first available three-bedroom subsidized unit on its current waiting list for subsidized housing;

E. Award Ms. Wylie statutory damages under the FDCPA, compensatory damages, punitive damages, reasonable costs and attorneys' fees in recognition of the Defendants' unlawful conduct and Ms. Wylie's substantial resulting injuries; and

F. Grant the Plaintiff all such other and further relief as the nature of her cause and justice may require.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

DATED: April 13, 2017

Respectfully submitted,

Chinh Q. Le, D.C. Bar # 1007037
Rachel A. Rintelmann, D.C. Bar #1003498
(pursuant to LCvR83.2(g))
LEGAL AID SOCIETY OF THE DISTRICT OF COLUMBIA
1331 H Street, N.W., Suite 350
Washington, D.C. 20005
Tel. (202) 386-6672
Fax (202) 727-2132
cle@legalaiddc.org
rrintelmann@legalaiddc.org

*and*

Theodore A. Howard, D.C. Bar # 366984
Bonnie Thompson Wise, D.C. Bar #1028788
(pursuant to LCvR83.2(g))
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000
thoward@wileyrein.com
bwise@wileyrein.com

By: ______________________
Theodore A. Howard

*Attorneys for Plaintiff Turquoise Wylie*